No. 67.—JAMES W. YARBOROUGH and others, plaintiffs in error, *vs.* JOHN WEST, defendant in error.

[1] An estate in *remainder* in slaves, cannot be created by a parol or verbal gift.

[2.] In order to raise a *trust* by the *promise* or *agreement* of a party, which a Court of Equity will execute, it must be founded on some *meritorious* or some *valuable* consideration.

In Equity, in Cobb Superior Court.    Decision upon demurrer, made by Judge HILL, April Term, 1851.

This was a bill filed by James W. Yarborough and his wife, formerly Harriet M. West, Richard B. Higgins and his wife, formerly Jane West, John H. Higgins and his wife, formerly Hester West.

The bill alleges, that in the year 1818, John Wingo, of Spartanburg District, South Carolina, made a parol gift of a negro boy, named Peter, about five years of age, to his daughter, Jincy

West, during her life, and at her death said negro was to be-come the property of the children then born of the said Jincy, and to be born, and to vest in them and in no one else; that at the time of the gift, there were two children then living, born of the said Jincy, as the wife of John West, the defendant, to wit: Harriet M. and Hester, two of the complainants in the bill. The bill alleges, that the negro was delivered to the said Jincy West and her husband, John West, who thereby became a trus-tee, by operation of law, for the said Jincy during her life, and for the benefit of her children who might be living at her death; that the said negro remained in the possession of John West, from the time of the gift until the year 1836; that Jincy West departed this life about the year 1830, leaving four children, complainants in this bill; that after her death, John Wingo ap-plied to West, and required of him to surrender the said negro to him, the said John Wingo, to be held in trust by him for the benefit of the said children of Nancy West, when the said John West promised the said Wingo that he would hold the said ne-gro boy in trust for the said children; that the said West remov-ed to Georgia in 1835 or 1836, and about that time sold and disposed of the said negro boy, to some person unknown to com-plainants, for the sum of nine hundred dollars.

The bill prayed that defendant should be decreed to come to a full and fair settlement in relation to the value, and the hire, and the interest thereon of the said negro boy.

To this bill defendant filed a general demurrer.

At the hearing, counsel for complainants moved to amend the bill, by striking out the word " parol" before " gift," in the 11th line from the top of the first page, and, also, by inserting " that they could not establish their claim without resorting to the con-science of the defendant," and by adding a " special prayer for relief."

The Court overruled the motion to amend, sustained the de-murrer, and dismissed the bill.

IRWIN, represented by CALHOUN, for plaintiff in error.

RICE, for defendant in error.

*By the Court.*—WARNER, J. delivering the opinion.

This is a general demurrer to the complainant's bill for want of equity, and we shall consider the question as if the bill had been *amended,* as proposed by the complainants, at the hearing of the demurrer in the Court below.

[1.] The bill alleges, "that John Wingo made a *parol* gift of a negro boy named Peter, to his daughter, Jincy West, *during her life,* and *at her death,* said negro boy was to become the property of the children then born of the said Jincy, and to be born, and to vest in them and no one else."

By the terms of this parol gift, the boy Peter was given to Jincy West, during her life, remainder over to such children as she then had born, and to such as thereafter might be born. Viewing this as a parol or verbal gift of the slave Peter to Jincy West, during life, with *remainder* over to such of her children as were then in life, and to such as thereafter might be born, before her death, it comes fully within the principle settled by this Court in *Kirkpatrick vs. Davidson,* 2 *Kelly,* 297. It was, however, said on the argument, that it does not necessarily follow from the allegation, that the gift was a *parol* gift; it was not *in writing.* "Parol, or more properly *parole,* (says *Bouvier,*) is a French word, which means literally *word* or *speech.* It is used to distinguish contracts which are made verbally or in writing, *not under seal,* from those which *are under seal.*" The same author defines a "parol lease" to be "An agreement made *verbally, not in writing,* between the parties." 2 *Bouvier's Law Dic.* 262. In the common acceptation of the term, a *parol gift of slaves* would receive the same construction as a *parol lease of land.* By the 17th Rule of Equity Practice, (2 *Kelly,* 484,) copies of *all writings* and other exhibits, are required to be attached to the complainant's bill. The complainants in this case have made no exhibit of any *writing,* by which this alleged gift was made in their bill, which we are bound to presume they

would have done, had any such existed, or have given some legitimate *excuse* why they did not do so.

The complainants proposed to amend their bill by striking out the word parol, in the eleventh line from the top of the first page in their bill. If that amendment had been allowed as asked, still the word *parol*, as applied to the gift of the slave Peter, is inserted in other parts of the bill, and why should the Court keep the parties litigating, unless upon a satisfactory showing, the complainants could so amend their bill as to allege the gift of the slave was *in writing*, and not by a mere parol or *verbal gift?*

If the gift of the slave had been in *writing*, and by *mistake* it was omitted to have been so alleged in the bill, we have no doubt the Court would have allowed the bill to have been amended in that particular, on a proper showing for that purpose; but no such application was made to the Court, for the reason, we conclude, that there was *no gift* of the slave *in writing*; and such, doubtless, was the conclusion of the Court below, from all the facts and circumstances then before it.

[2.] But it is further insisted, that notwithstanding this limitation over to the children of Jincy West, by the parol gift of John Wingo, may be void as to them; yet it is alleged, that after the death of Jincy West, John West, her husband, most *faithfully promised* John Wingo, (who demanded the possession of the slave Peter, for the benefit of the children of his daughter, Jincy, by virtue of said gift,) that he would hold and manage the said boy, Peter, in *trust* for the benefit and use of the said children.

By the *parol gift*, the title to the slave Peter, vested in Jincy West, the wife of John West, and consequently became the property of her husband, by virtue of his marital rights; the gift being by *parol*, no interest in the slave Peter vested in the children who were the persons to take in *remainder* under that parol gift. Supposing John West to have been fully *cognizant* of his legal rights at the time of the alleged promise, made by him to John Wingo, in regard to the slave Peter, yet there was no *consideration* to support that promise—the title to the property was already vested in him by law, and was not, at that time,

either in John Wingo or *the children,* according to the judgment of this Court in *Kirkpatrick vs. Davidson.* In order to raise a *trust* by the *agreement* of a party, which a Court of Equity will execute, it must be founded upon some *meritorious* or some *valuable* consideration. 2 *Story's Equity,* 235, §973. The only consideration which we can discover to support this alleged promise or agreement is, that West should have the *privilege* of retaining the *possession* of his *own property.*

Let the judgment of the Court below be affirmed.